# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENICE L. TARKINGTON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>NANCY A. BERRYHILL[1],<br>Acting Commissioner of Social Security,<br><br>　　　　Defendant. | Case No.: 1:17-cv-0072 - JLT<br><br>ORDER REMANDING THE ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF DENICE L. TARKINGTON AND AGAINST DEFENDANT NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY |

Denice Tarkington asserts she is entitled to a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff argues the administrative law judge erred in evaluating the medical record and seeks judicial review of the decision to deny her application for benefits. Because the ALJ erred in rejecting limitations identified by Plaintiff's treating physician, the matter is **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## **PROCEDURAL HISTORY**

In May and June 2014, Plaintiff filed applications for benefits, alleging "disability beginning September 8, 2012." (Doc. 9-8 at 2-4) Plaintiff reported she had "limited reach in [her] left arm as well as strength," and that her hands "both have carpal tunnel." (Doc. 9-9 at 49) Plaintiff also indicated that

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court substitutes Nancy A. Berryhill for her predecessor, Carolyn W. Colvin, as the defendant.

she had degenerative disc disease in her back, which affected her ability to walk, stand, and sit "for more then (sic) 10 to 15 minutes at a time." (*Id.*)

The Social Security Administration denied Plaintiff's applications for benefits at the initial level and upon reconsideration. (Doc. 9-3 at 18) Plaintiff requested an administrative hearing, at which she testified before an ALJ on July 27, 2016. (*Id.*) The ALJ concluded Plaintiff was not disabled and issued an order denying benefits on September 2, 2016. (*Id.* at 18-32) The Appeals Council denied Plaintiff's request for review of the decision on November 10, 2016. (*Id.* at 2-4) Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security ("Commissioner").

## **STANDARD OF REVIEW**

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## **DISABILITY BENEFITS**

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which

he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounois v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## **ADMINISTRATIVE DETERMINATION**

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520, 416.920(a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity ("RFC") to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

### A. **Relevant Medical Opinions**

Dr. Samuel Rush performed a complete internal medicine evaluation on August 19, 2014, at which Plaintiff said she had "problems with her left shoulder and back." (Doc. 9-14 at 75) Dr. Rush noted he did not have medical records to review, but Plaintiff reported being "told she has degenerative disc disease." (*Id.*) Dr. Rush observed that Plaintiff "walk[ed] slowly and stiffly due to back discomfort and limitation," but was "able to walk on [her] toes and … heels." (*Id.* at 78) Dr. Rush found Plaintiff's motor strength was "5/5 in the upper extremities and 4/5 in the lower extremities," and her senses were "[n]ormal to touch, temperature and pinprick." (*Id.*) According to Dr. Rush, Plaintiff was "quite limited in her range of motion in her back" and had "[l]imitation of movement of the left shoulder." (*Id.*) Dr. Rush opined Plaintiff was "limited to [lifting and carrying] 20 pounds occasionally and 10 pounds frequently," and "cannot reach above should level on the left." (*Id.* at 78-79) He also determined Plaintiff had postural limitations and could "occasionally bend" but "cannot kneel, stoop, crawl or crouch." (*Id.* at 79) Further, Dr. Rush determined Plaintiff "should not walk on uneven terrain

3

or climb ladders." (*Id.*) He concluded Plaintiff did not have any further restrictions with standing, walking, or sitting. (*Id.* at 78-79)

On September 24, 2014, Dr. J. Bonner completed a physical residual functional capacity assessment, noting the limitations identified were supported by an ALJ's decision dated September 9, 2012. (*See* Doc. 9-4 at 42, 43) Dr. Bonner concluded Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for "[a]bout 6 hours in an 8-hour workday;" and sit for a total of "[a]bout 6 hours in an 8-hour workday." (*Id.* at 42) In addition, Dr. Bonner opined Plaintiff could occasionally reach overhead, climb, stoop, crouch, and crawl; and she could frequently balance and kneel. (*Id.*) Dr. Bonner indicated Plaintiff should "[a]void even moderate exposure" to hazards, such as machinery and heights. (*Id.*)

On February 25, 2015, Dr. A. Khong completed a physical residual functional capacity assessment. (Doc. 9-4 at 87-89) Dr. Khong also believed Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; and sit, stand, and walk for [a]bout 6 hours in an 8-hour day." (*Id.* at 87-88) According to Dr. Khong, Plaintiff was "[l]imited in upper extremities," including with the ability to push, pull, and reach overhead. (*Id.* at 88) Dr. Khong determined Plaintiff could occasionally stoop; kneel; crawl; crouch; and climb ramps, stairs, ladders, ropes, and scaffolds. (*Id.*) Dr. Khong opined Plaintiff did not have environmental limitations. (*Id.* at 89)

Dr. Lalaine Tiu, Plaintiff's treating physician, completed a medical source statement on March 4, 2016. (Doc. 9-16 at 66-68) Dr. Tiu noted she had been treating Plaintiff on a monthly basis for one year and diagnosed Plaintiff with "spinal stenosis lumbar spine with radiculopathy, morbid obesity, hyperlipidemia, [and] uterine fibroids." (*Id.* at 66) Dr. Tiu opined Plaintiff could walk "1-2 blocks" without severe pain or needing to rest; sit for 15 minutes at one time; stand for 30 minutes at one time; and needed to be able to shift positions at will from sitting, standing, and walking. (*Id.*) According to Dr. Tiu, Plaintiff needed to use a cane due to imbalance, pain, and weakness. (*Id.* at 67) She believed Plaintiff could never twist, crouch, or climb ladders; and rarely stoop or bend. (*Id.*) Dr. Tiu also indicated Plaintiff was able to lift and carry less than ten pounds frequently, ten pounds occasionally, and never twenty pounds or more. (*Id.*) Finally, she believed Plaintiff would be likely to miss work more than four days per month due to her impairments. (*Id.* at 68)

**B.     The ALJ's Findings**

Pursuant to the five-step process, the ALJ first determined Plaintiff did "not engage[] in substantial gainful activity since September 8, 2012, the alleged onset date." (Doc. 9-3 at 21) At step two, the ALJ found:

> The claimant has the following severe impairments: degenerative disc disease of the cervical spine; cervico-brachial syndrome; degenerative disc disease of the lumbar spine with spondylosis; lumbar facet arthropathy; disorders of the sacrum; bilateral shoulder degenerative joint disease, status- post left shoulder surgeries in 2008 and 2009; obesity; bilateral mild sensory carpal tunnel syndrome; history of learning disorder involving visual/perceptual delays; posttraumatic stress delays; and major depressive disorder (20 CFR 404.1520(c) and 416.920(c)).

(*Id.* at 21) At step three, the ALJ determined that Plaintiff did not have an impairment, or combination of impairments, that met or medically equaled a Listing, including Listings 1.02, 1.04, 12.02, 12.04, and 12.06. (*Id.* at 21-22) Next, the ALJ determined:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, she can lift and carry 20 pounds occasionally and 10 pounds frequently' she can sit about six hours out of an eight-hour workday; she can stand about six hours out of an eight-hour workday; she can walk about six hours out of an eight-hour workday; she must have the option of alternating between sitting and standing every 45 minutes, briefly up to 30 seconds; she can occasionally stoop, crouch, crawl, and climb; she can engage in occasional bilateral overhead reaching, pushing, and pulling; she is limited to frequent handling, fingering, and feeling; and she is limited to simple routine tasks and frequent interaction with the public and co-workers.

(*Id.* at 23) With these limitations, the ALJ found at step four that Plaintiff was not able to perform any past relevant work. (*Id.* at 30) However, the ALJ determined, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.* at 31-32) Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. (*Id.* at 32)

## DISCUSSION AND ANALYSIS

Plaintiff contends the ALJ erred in reviewing the medical record and "failed to provide a sufficient reason to discount Dr. Tiu's opinion." (Doc. 16 at 15) On the other hand, the Commissioner argues, "The ALJ supported her assessment of the medical evidence with substantial evidence and applied the proper legal standards." (Doc. 18 at 8; emphasis omitted)

///

### A. ALJ's Evaluation of the Medical Evidence

In this circuit, the courts distinguish the opinions of three categories of physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Generally, the opinion of a treating physician is afforded the greatest weight but it is not binding on the ultimate issue of a disability. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Further, an examining physician's opinion is given more weight than the opinion of non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Thus, the courts apply a hierarchy to the opinions offered by physicians.

A treating physician's opinion is not binding upon the ALJ, and may be discounted whether or not another physician contradicts the opinion. *Magallanes*, 881 F.2d at 751. An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only by identifying "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.*, 81 F.3d at 830.

When there is conflicting medical evidence, "it is the ALJ's role to determine credibility and to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The ALJ's resolution of the conflict must be upheld when there is "more than one rational interpretation of the evidence." *Id.; see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ"). Here, Plaintiff contends the ALJ erred in rejecting opinions offered by Dr. Tiu, her treating physician. Because Drs. Bonner and Khong offered opinions that conflicted with limitations identified by Dr. Tiu, the ALJ was required to set forth specific and legitimate reasons to support her rejection of Dr. Tiu's opinions. *See Lester*, 81 F.3d at 830.

Examining the medical evidence, the ALJ summarized the conclusions of Dr. Tiu and the weight given to the opinion as follows:

> The claimant's treating physician, Lalaine Tiu, M.D., completed a *Physical Medical Source Statement* on March 4, 2016 (Ex. B15F). Dr. Tiu noted she treated the claimant

> on a monthly basis for one year (Ex. B15F/2). She diagnosed spinal stenosis, lumbar spine with radiculopathy and morbid obesity (*id.*). She assessed limitations, which would prevent the claimant from engaging in substantial gainful activity. Specifically, she opined the claimant was able to sit, stand or walk less than two hours each in an eight-hour day (*id.*). She also opined the claimant was likely to be absent from work more than four days per month secondary to her impairments (Ex. B15F/4). Dr. Tiu indicated the limitations she assessed were effective as of March 3, 2015 (*id.*).
>
> The undersigned gives Dr. Tiu's assessment little weight because it is unsupported by the record. The restrictions with respect to sitting, standing and walking are overly restrictive given the objective medical findings. As was discussed above, the findings from the physical examinations showed that the claimant was neurologically intact, and there was no evidence of difficulties with station or gait.

(Doc. 9-3 at 29) Plaintiff contends the ALJ's reasons for rejecting the opinion of Dr. Tiu are not supported by the record, and are not "specific and legitimate" reasons, as required by the Ninth Circuit. (Doc. 16 at 12-15)

The Ninth Circuit has determined that an ALJ may reject limitations "unsupported by the record as a whole." *Mendoza v. Astrue*, 371 Fed. Appx. 829, 831-32 (9th Cir. 2010) (citing *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2003)). However, when an ALJ believes the treating physician's opinion is unsupported by the objective medical evidence, the ALJ has a burden to "set[] out a detailed and thorough summary of the facts *and conflicting clinical evidence*, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986) (emphasis added); *see also Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct."). For example, an ALJ may also discount the opinion of a treating physician by identifying an examining physician's findings to the contrary and identifying the evidence that supports that finding. *See, e.g., Creech v. Colvin*, 612 F. App'x 480, 481 (9th Cir. 2015).

The ALJ failed meet this burden because she did not identify the clinical findings or the objective evidence that she believed to be in conflict with the limitations identified by Dr. Tiu.[2] Rather, the ALJ has offered only a summary of the medical record, and her conclusion that the "restrictions

---

[2] The Court may not accept post hoc explanations and cannot affirm on grounds not invoked by the ALJ. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003); *see also Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (explaining that the court could not consider the inconsistencies identified by the government and not the ALJ because the court is "constrained to review the reasons the ALJ asserts"). Defendant identifies evidence in the ALJ's summary of the medical record that the Commissioner asserts conflicts with the limitations identified by Dr. Tiu. (Doc. 18 at 9-10). However, the ALJ fails to address this evidence in explaining the weight given to the opinion. (*See* Doc. 9-3 at 29) Consequently, the Court is unable to consider the inconsistences identified by the Commissioner.

7

with respect to sitting, standing and walking" identified by Dr. Tiu conflicted with findings "discussed above" in the summary. (*See* Doc. 9-3 at 29). Further, as Plaintiff notes, the ALJ's conclusion that there was "no evidence of difficulties with station or gait" in the record is erroneous, as Dr. Rush observed that Plaintiff "walk[ed] slowly and stiffly" and concluded she "should not walk on uneven terrain." (Doc. 9-4 at 75, 79) Because the ALJ did not identify specific evidence in the record that conflicted with the sitting, standing, and walking limitations identified by Dr. Tiu, the purported conflict with the medical record is not a specific, legitimate reason for rejecting Dr. Tiu's opinions. *See Cotton*, 799 F.3d at 1408; *Reddick*, 157 F.3d at 725.

Moreover, Dr. Tiu opined that Plaintiff had postural limitations that were not acknowledged by the ALJ. For example, Dr. Tiu concluded Plaintiff could never twist, crouch, or climb ladders; and she could rarely stoop and bend. (Doc. 9-16 at 67) She also opined Plaintiff needed to use a cane due to imbalance. (*Id.*) Significantly, these limitations are similar to the findings of Dr. Rush, who concluded Plaintiff could "occasionally bend" but "should not walk on uneven terrain or climb ladders," and could never crawl or crouch. (Doc. 9-14 at 75) However, the ALJ rejected these postural limitations and concluded Plaintiff could "occasionally stoop, crouch, crawl, and climb." (Doc. 9-3 at 23) Because the ALJ did not address the conflict between the findings of Drs. Tiu with the opinions of Drs. Khong and Bonner—who did not examine Plaintiff but concluded she could perform all postural activities on an occasional basis (Doc. 9-4 at 42, 88)—the ALJ also erred in evaluating Plaintiff's postural limitations.

As the Ninth Circuit explained, "To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988). Because the ALJ offered only her conclusion that Dr. Tiu's opinion was not supported by the record, but failed to clearly identify or address conflicting findings. Given the lack of specificity, the ALJ erred in evaluating the medical record.

**B.     Remand is Appropriate**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative

8

agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

The ALJ failed to identify legally sufficient reasons for rejecting the physical limitations assessed by Plaintiff's treating physician, Dr. Tiu. Because the ALJ failed to resolve the conflicts in the record regarding Plaintiff's limitations, the matter should be remanded for the ALJ to re-evaluate the medical evidence. *See Moisa*, 367 F.3d at 886.

## **CONCLUSION AND ORDER**

For the reasons set forth above, the Court finds the ALJ erred in evaluating the medical evidence, and the administrative decision should not be upheld by the Court. *See Sanchez*, 812 F.2d at 510. Because the Court finds remand is appropriate on these grounds, it makes no findings regarding Plaintiff's mental limitations. Accordingly, the Court **ORDERS**:

1. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and
2. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Plaintiff Denice Tarkington and against Defendant, Nancy A. Berryhill, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **February 26, 2018**   **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE